STATE OF CONNECTICUT *v.* PHILIP COLTON

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued October 14—decision released December 27, 1977

136

*John R. Williams,* for the appellant (defendant).

*William F. Gallagher,* special assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

LONGO, J. The defendant, Philip Colton, was convicted by a jury under an information charging him, Harold Young and other persons known and unknown with the crime of conspiracy, General Statutes §53a-48, in that they conspired to commit the crime of arson in the first degree in violation of General Statutes § 53a-111. The preliminary statement of issues in the defendant's appeal from the judgment rendered on the verdict included the court's rulings on his motions for a bill of particulars, to set aside the verdict, and to dismiss. Those claims have not been briefed and are therefore deemed abandoned. *State* v. *Grasso,* 172 Conn. 298, 300, 374 A.2d 239. The remaining issues concern three evidentiary rulings by the court and its charge to the jury.

At the defendant's trial the only agreement the state sought to prove was between the defendant and Young. The state's case rested primarily on the testimony of Young and Michael McLeese. There

was evidence from which the jury could have found the following facts. On February 11, 1974, the defendant asked Young to burn down O'Connell's bar in New Haven because the competition was hurting the defendant's own bar business. Young agreed in return for the defendant's promise to pay him $500. On the night of February 13, Young enlisted the aid of McLeese. They went to the defendant's bar and discussed the job with the defendant, who advised them of the best way to start a fire. Young and McLeese left to investigate O'Connell's bar, placed a mattress against the rear of the structure and doused it with lighter fluid. After going back to the defendant's bar, they returned that night to O'Connell's. Young lit a flare. He was immediately confronted by police officers who had staked out the location, acting on information supplied by McLeese. Young subsequently pleaded guilty to criminal charges arising from the incident. At his trial the defendant denied any knowledge of or participation in the conspiracy, and sought to impeach the testimony of Young and McLeese.

The defendant first assigns as error the court's admission into evidence of a statement now claimed to be excludable as hearsay. While the jury was excused, Young's father, Harold Young, Sr., testified to a conversation with the defendant. Defense counsel objected. No grounds for the objection were specified, no exception was taken to the court's overruling of the objection, and no objection or exception was made to the court's allowance of essentially the same testimony before the jury. We have repeatedly held that rulings on evidence will not be reviewed unless there has been compliance with the procedural requirements for raising error. Prac-

tice Book § 652; *State* v. *Evans,* 165 Conn. 61, 67, 327 A.2d 576; *State* v. *Ferraro,* 164 Conn. 103, 106, 318 A.2d 80; *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584, cert. denied, 409 U.S. 984, 93 S. Ct. 332, 34 L. Ed. 2d 249. Only in the most exceptional circumstances, which are not present here, will this court consider a claim that has not been raised and decided in the trial court. See *State* v. *Evans,* supra.

The defendant next contends that in two respects his attempts to impeach the testimony of his coconspirator Young were so severely curtailed by the court that he was denied his constitutional right of confrontation. The defendant's first claim arises from his counsel's efforts to show that Young had made prior inconsistent statements in the presence of Ronald Jones, an investigator for the public defender's office representing Young, and Louis Buonfiglio, an investigator for the defendant. Defense counsel questioned Jones at length about his conversation with Young, which, according to Jones, took place in the morning. Jones could not recall any other conversation with Young that day. Defense counsel requested permission for Jones to examine his notes on Young's statements in order to refresh his recollection. The court refused on the ground that Jones' notes, which Young had signed, were within the attorney-client privilege. Only confidential communications between attorney and client are privileged. *Rienzo* v. *Santangelo,* 160 Conn. 391, 395, 279 A.2d 565; *State* v. *Hanna,* 150 Conn. 457, 466, 191 A.2d 124; McCormick, Evidence (2d Ed.) § 91. Young could not reasonably have expected that his statements to Jones in Buonfiglio's presence would be kept confidential, since he must have known that Buonfiglio intended to reveal the content of Young's remarks to the defend-

ant and the defendant's attorney. Therefore, Jones should have been allowed to use his notes to refresh his recollection. The defendant bears the burden of establishing that the court's error was so materially injurious as to constitute a cause for reversal. *State* v. *L'Heureux,* 166 Conn. 312, 323–24, 348 A.2d 578. Subsequent to the court's ruling, Jones testified extensively concerning his later conversation with Young. We conclude the error was harmless.

The defendant's second claim is that his attorney should have been allowed to impeach Young by asking him on cross-examination whether he had been adjudicated insane. The state's objection to this question was sustained and an exception was taken. Then a discussion took place outside the hearing of the jury where it was revealed that at one time Young had been found not guilty by reason of insanity and confined and treated for mental illness pursuant to General Statutes § 53a-47. The court and both counsel reached agreement that the question was improper, but that defense counsel could question Young about his mental condition at the present time or at the time of the conspiracy. Upon the jury's return defense counsel followed this line of inquiry.

Defense counsel's acquiescence in the court's ruling raises a serious question whether his claim of error was distinctly presented at trial as required by Practice Book § 652. We will review his claim, however, since the fundamental constitutional right of confrontation is involved and the record is adequate to decide the issue. *State* v. *Evans,* 165 Conn. 61, 70–71, 327 A.2d 576. We find no merit in the defendant's assertion that the verdict of not guilty by reason of insanity was admissible as a prior con-

viction. Section 53a-47 applies to criminal defendants *"acquitted* on the grounds of mental disease or defect." (Emphasis added.) We also find no merit in the defendant's claim that Young's acquittal under § 53a-47 was admissible as an adjudication of insanity. His acquittal meant only that it was found that there was at least reasonable doubt as to his sanity at the time he committed a criminal act. *State v. Warren,* 169 Conn. 207, 215, 363 A.2d 91. Young's confinement and treatment upon judicial hearing subsequent to the verdict of acquittal were proper subjects for impeachment, and defense counsel was in fact permitted to pursue this line of questioning. See *Taborsky* v. *State,* 142 Conn. 619, 116 A.2d 433; 81 Am. Jur. 2d, Witnesses, § 540.

Finally, the defendant contends that the court in its charge should have warned the jury to scrutinize carefully the testimony of Young, the state's chief witness, who admitted his complicity in the offense and implicated the defendant. The defendant correctly points out that the inherent unreliability of accomplice testimony ordinarily requires a particular caution to the jury. See *Bruton* v. *United States,* 391 U.S. 123, 136, 88 S. Ct. 1620, 20 L. Ed. 2d 476; *United States* v. *Leonard,* 494 F.2d 955, 959–60 (D.C. Cir.); *State* v. *Pecciulis,* 84 Conn. 152, 159, 79 A. 75; *State* v. *Stebbins,* 29 Conn. 463, 473. We cannot agree, however, that the court failed to fulfill its duty. In *State* v. *Carey,* 76 Conn. 342, 349, 56 A. 632, we stated: "The conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the judge to specially caution the jury." The relevant "conditions of character and interest" in the present case were Young's

status as a self-confessed criminal and his possible interest in favorable treatment. The court drew the jury's attention to both factors.[1]

The gravamen of the defendant's complaint, therefore, is the court's failure to use the words "scrutinize carefully" in its charge. Failure to charge precisely as proposed by a defendant is not error where the point is fairly covered in the charge. *State* v. *Vennard,* 159 Conn. 385, 399, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625. Moreover, the defendant neither requested the court to include the words "scrutinize carefully" in its charge nor objected to their absence in the charge as given. We conclude that the court adequately instructed the jury on the testimony of the accomplice Young.

There is no error.

In this opinion the other judges concurred.

---

[1] The court charged, in part: "You may consider, for example, that he [Young] is a self-confessed criminal, and everything else being equal, you would not ordinarily believe the testimony of a man who committed a crime such as this as readily as you would that of a man of good character. . . . If you feel that he may in his own mind be looking for or hoping for some favors in the handling of his own situation, and, therefore, his testimony may be colored because of such thoughts, then, of course, you will give such weight to his testimony or no weight to it at all as may appear appropriate to you under all the circumstances."