Philip COLTON

v.

John R. MANSON, Commissioner, Connecticut Department of Correction.

Civ. No. H–78–99.

United States District Court, D. Connecticut.

Jan. 24, 1979.

John R. Williams, New Haven, Conn., for plaintiff.

William F. Gallagher, Sp. Asst. State's Atty., New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

Petitioner, Philip Colton, a prisoner at the Connecticut Correctional Institution at Somers, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In December 1974, he was convicted in a Connecticut state court of the crime of con-spiracy, Conn.Gen.Stat. § 53a–48, to commit arson in the first degree, Conn.Gen.Stat. § 53a–111. He was sentenced to a term of not less than five nor more than ten years. He challenges the constitutionality of his conviction on the ground that the denial of his right to confront and cross-examine a witness at his trial violated the sixth and fourteenth amendments.

The petitioner, a tavern owner, was charged with having conspired with one Harold Young and one Michael McLeese to burn down a tavern belonging to a competitor. Having been previously informed of what was to take place, the police caught Young and McLeese in the act of putting the torch to the building. Young pleaded guilty to the criminal charges arising out of the incident and was awaiting sentence at the time of the petitioner's trial. In petitioner's trial, the prosecution relied primarily on the testimony of Young and McLeese. Young testified that he had been induced to attempt the crime by petitioner's offer of $500.

At issue here is petitioner's effort to impeach Young's credibility through evidence of his character by questioning him about his acquittal of a murder charge by reason of insanity. Specifically, the petitioner claims constitutionally significant error when the trial judge sustained a prosecution objection to defense counsel's question of the chief government witness asking, for impeachment purposes, whether the witness had been adjudicated insane in a prior acquittal on a charge of murder by reason of insanity. The issue was squarely put to the Connecticut Supreme Court. *State v. Colton,* 174 Conn. 135, 139–40, 384 A.2d 343 (1977). The issue as presented there and renewed here is:

"that [petitioner's] attorney should have been allowed to impeach Young by asking him on cross-examination whether he had been adjudicated insane. The state's objection to this question was sustained and an exception was taken. Then a discussion took place outside the hearing of the jury where it was revealed that at one time Young had been found not guilty by reason of insanity and confined and treat-

ed for mental illness pursuant to General Statutes § 53a–47. The court and both counsel reached agreement that the question was improper, but that defense counsel could question Young about his mental condition at the present time or at the time of the conspiracy. Upon the jury's return defense counsel followed this line of inquiry."

*Id.* at 139, 343 A.2d at 346. The Supreme Court upheld the trial court's ruling.

■■■ It is generally held that the refusal to permit cross-examination of a government witness, or to otherwise impeach him, is a denial of the constitutional right of confrontation. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Thus, any evidence tending to show bias or prejudice of a witness against the defendant or in favor of the government may be shown. One kind of evidence widely accepted as impeaching a witness is his prior conviction of a felony. Under Connecticut's evidence rules, a witness may be impeached on cross-examination by evidence of a prior conviction of a felony. Conn.Gen.Stat. § 52–145; *State v. Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977). And, as the United States Supreme Court has observed:

"One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)." [1]

*Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (footnote omitted). At the same time, acts of misconduct by a witness are not admissible to impeach unless they have resulted in conviction. *United States v. Glasser,* 443 F.2d 994, 1003 (2d Cir.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971); *United States v. Sposato,* 446 F.2d 779, 780 (2d Cir. 1971). Indeed, it would be error to attack a witness' credibility by using extrinsic evidence of his conduct that has not resulted in conviction of a crime. Fed.R. Evid. 608(b) (1975); *United States v. Cluck,* 544 F.2d 195, 196 (5th Cir. 1976).

■■■ There seems no logical or constitutional basis for extending the scope of convictions which may be impeaching to in-

---

[1]. The impeachment of a witness by a general attack upon his credibility is analytically distinct from a showing of bias or ulterior motive. That evidence directed to each should be treated separately, and applied in terms of the logic applicable to each, was recently noted in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) where the status of a witness as a convicted juvenile delinquent was held to be constitutionally admissible to impeach him. The concurring opinion of Mr. Justice Stewart took care to point out this distinction:

"The Court holds that, in the circumstances of this case, the Sixth and Fourteenth Amendments conferred the right to cross-ex-

amine a particular prosecution witness about his delinquency adjudication for burglary and his status as a probationer. Such cross-examination was necessary in this case in order 'to show the existence of possible bias and prejudice . . . .,' *ante,* at 317, [94 S.Ct. 1105]. In joining the Court's opinion, I *would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions."*
415 U.S. at 321, 94 S.Ct. at 1112–1113 (Stewart, J., concurring) (emphasis added).

clude acquittals by reason of insanity. As Justice Longo stated in the Connecticut Supreme Court decision:

"We find no merit in the defendant's assertion that the verdict of not guilty by reason of insanity was admissible as a prior conviction."

*State v. Colton, supra,* 175 Conn. at 139–40, 384 A.2d at 346. It is true, as petitioner argues, that an acquittal by reason of insanity necessarily carries with it a finding that the *actus reus* of the crime was actually performed by the defendant. *United States v. Brown,* 155 U.S.App.D.C. 402, 478 F.2d 606, 610 (1973); *State v. Warren,* 169 Conn. 207, 215, 363 A.2d 91 (1975). But it is clear that a verdict of "not guilty by reason of incompetency" is the equivalent to a simple "not guilty" verdict. *United States v. Freeman,* 357 F.2d 606, 625 (2d Cir. 1966). An insanity acquittal can carry with it no moral obliquy, since one jury has already determined that the acquitted individual should not be considered criminally responsible for his conduct. To allow the introduction of Young's acquittal on a murder charge as evidence for impeachment purposes would run counter to the policy underlying the insanity plea, *see United States v. Freeman,* 357 F.2d 606, 626 n.61 (2d Cir. 1966).

■ The basic issue is whether exclusion of the record of acquittal withheld "from the jury information necessary to a discriminating appraisal of [the witness'] trustworthiness to the prejudice of [petitioner's] substantial rights." *Gordon v. United States,* 344 U.S. 414, 417, 73 S.Ct. 369, 372, 97 L.Ed. 447 (1953). Even if the witness had not been insane at the time of committing the acts of violence, purely as a matter of logic, that kind of " 'bad' person" conduct has little direct bearing on honesty and veracity, *Davis v. United States,* 133 U.S.App.D.C. 172, 409 F.2d 453, 456–57 (1969); *Gordon v. United States,* 127 U.S. App.D.C. 343, 383 F.2d 936, 940 (1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), and its exclusion would be within the discretion of the trial judge. *See United States v. Turcotte,* 515 F.2d 145, 151 (2d Cir. 1975), *cert. denied sub nom. Gerry v. United States,* 423 U.S. 1032, 96 S.Ct. 564, 46 L.Ed.2d 406 (1975). But even if not, not every evidentiary error rises to the magnitude of a constitutional violation. *See California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 26 L.Ed.2d 489 *et seq.* (1970); *Wilson v. MacDougall,* Civil No. 13,815 (D.Conn. June 19, 1970), *aff'd,* 458 F.2d 159 (2d Cir. 1972).

■ Whatever questionable value Young's prior violent conduct had for evaluating his veracity was nullified by the judicial determination that he lacked legal responsibility for it. The refusal of the trial court to permit the insanity acquittal to be shown to impeach him was not erroneous. Sustaining the objection to the use of the acquittal verdict for that purpose did not deprive the petitioner of his constitutional right of confrontation. Accordingly, the petition for a writ of habeas corpus is denied and the petition is dismissed.

SO ORDERED.